## Adkins v. Stow City Bd. of Edn.
*[Cite as 8 AOA 431]*

*Case No. 14617*
*Summit County, (9th)*
*Decided November 14, 1990*

*Ronald G. Macala and Salvatore J. Falletta, 525 Wolf Ledges Pkwy., Akron, Ohio 44311 for Plaintiff.*

*G. Frederick Compton, Jr., R. Brent Minney, and Karrie M. Kalail, Attorneys at Law, 565 Wolf Ledges Pkwy., P. O. Box 2020, Akron, Ohio 44309 for Defendant.*

REECE, P.J.

The central question presented in this appeal is whether certain published remarks attributed to a high school basketball coach were constitutionally protected and therefore inappropriate grounds for not renewing his coaching contract. In concluding that they were not, we reverse the judgment of the trial court.

### Facts

Plaintiff-appellee, Harold Adkins (Adkins), has been a high-school teacher in the business department of Stow City schools for twenty years. In 1979 he became the boys' varsity basketball coach and received a supplemental one-year coaching contract. Over the next nine years this employment agreement was annually renewed by defendant-appellant, Stow city School District Board of Education (Board).

Adkins' only losing season occurred in 1987-88. While still receiving a positive evaluation by the principal at the end of this school year, the superintendent recommended to the Board that Adkins' coaching contract not be renewed. A hearing was conducted at which the Board members unanimously agreed that the coach should be released. His status as a business teacher was not affected.

Adkins filed a complaint in the common pleas court on August 3, 1988 maintaining that the Board's actions violated his First Amendment right to free speech. No other claims for relief were set forth. At the ensuing trial, evidence was presented suggesting that the decision not to renew Adkins' supplemental contract may have been based upon an article about the team appearing in the Akron Beacon Journal sports section on January 28, 1988. A copy of that story is appended hereto. The trial court found in favor of the former coach and ordered that he be reinstated with back-pay. This appeal by the Board now follows.

### Assignment of Error I

"The common pleas court committed prejudicial error by erroneously applying the standards set forth in *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274 (1977)."

It is now well settled that public employees do not abandon their First Amendment rights when they enter the workplace. *Pickering v. Bd. of Edn.* (1968), 391 U.S. 563, 568; *Mt. Healthy City Bd. of Edn. v. Doyle* (1977), 429 U.S. 274; see, also, *Robinson v. Lebanon Bd. of Edn.* (1985;), 29 Ohio App. 3d 103; *Lesiak v. Ferguson* (1982), 4 Ohio App. 3d 244. Even those employees with no guaranteed expectancies of continued employment

are free from dismissal upon constitutionally impermissible grounds. *Mt. Healthy, supra,* at 283; *Rankin v. McPherson* (1987), 483 U.S. 378, 383; *Rutan v. Republican Party of Ill.* (1990), 497 U.S. ____, Ill L. Ed. 2d 52, 65. We have little doubt that these protections are extended to teachers seeking a supplemental contract from a public school board.

To establish a cause of action upon such a basis, the initial burden is on the employee to substantiate that his conduct was constitutionally protected. *Mt. Healthy, supra,* at 287. After such a showing, the employee must then demonstrate that the Conduct was a "substantial" or "motivating" factor in the government employer's decision. *Id.* If this second step is satisfied, the burden shifts to the government employer to establish by a preponderance of the evidence that the same decision would have been reached even in the absence of the protected conduct. *Id.* See, generally, Tribe, American Constitutional Law (2 Ed. 1988) 816, Section 12-5.

Our standard of review under the *Mt. Healthy* approach is clear. The question of whether conduct is constitutionally protected is one of law. *Connick v. Myers* (1983), 461 U.S. 138, 148 n. 7. The remaining issues require determinations of fact. *Hall v. Ford* (C.A.D.C. 1988), 856 F. 2d 255, 258. In contrast to questions of law, the trial court's determinations of fact are entitled to substantial deference. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St. 2d 279.

Turning to the first prong of the *Mt. Healthy* analysis, Adkins argues that his contributions to the Beacon Journal article were protected by the First Amendment. The trial court summarily agreed without explanation. After a careful review of the record, we conclude that this preliminary ruling was incorrect.

Absent unusual circumstances, speech is not constitutionally protected unless it pertains to matters of public concern. *Connick, supra,* at 146; *Rankin, supra,* at 384-385 n. 7. Under a broad interpretation of the First Amendment, speech concerning athletic programs and athletes may be of public concern. See *Hall, supra* (athletic director citing various violations of university and National Collegiate Athletic Association (NCAA) rules by his school); *Jett v. Dallas Indep. Sch. Dist.* (C.A.5, 1986), 798 F. 2d 748 (quotes of football coach in newspaper regarding inability of players to meet proposed NCAA academic requirements), affirmed in part on other grounds (1989), 105 L. Ed. 2d 598; *McGee v. South Pemiscot Sch. Dist. R-V* (C.A.8, 1983), 712 F. 2d 339 (coach writing letter to newspaper editor opposing termination of track program).

No bright-line test exists for determining whether speech is of public concern. The fact that Adkins' comments appeared in a newspaper article may suggest public interest, but media publication is not determinative of whether speech is protected for First Amendment purposes. *Koch v. City of Hutchinson* (C.A.10, 1988), 847 F. 2d 1436, 1448, certiorari denied (1988), 102 L. Ed. 2d 150; *Egger v. Phillips* (C.A.7, 1983), 710 F. 2d 292, 317 (en banc), certiorari denied (1983), 464 U.S. 918. statements pertaining to topics of general public interest are not always constitutionally safeguarded. *Meyers v. City of Cincinnati* (S.D. Ohio 1990), 728 F. Supp. 477, 484-485. Moreover, speech is not necessarily of public concern simply because it is uttered by a public employee. *Connick, supra,* at 149. The proper standard was enunciated by the United States Supreme Court in *Connick:*

"\*\*\*

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record. \*\*\*." (Footnote omitted.) *Id.* at 147-148.

Taken at face value, the actual quotes attributable to Adkins pertain primarily to his team's poor performance over the season. In no sense is Adkins quoted as having criticized anyone (except, of course, his players). Adkins is reported, not quoted, as saying that the program was underfunded due to the failure of his district to pass a levy but his comments go no farther than this.

The motive of the speaker is a substantial factor in determining whether speech addresses a matter of public concern. *Schalk v. Gallemore* (C.A.10, 1990), 906 F. 2d 491, 495; *Barkoo v. Melby* (C.A.7, 1990), 901 F. 2d 613, 618. Under oath, Adkins vehemently denied responsibility for any of the comments not directly quoted as his. The former coach testified, very candidly, that he was extremely happy in Stow, had faith that the next levy would pass, and did not intend to reproach

the Board. He summed up his interview with reporter Ralph Paulk as follows:

"***

"The only thing I talked about in the entire article from when we started and Mr. Paulk took notes [,] concerned basketball, how we were doing, where we were going. And the things that we discussed in the entire interview when he took notes concerned basketball play. And I agreed I had made every comment that was in quotes by me, except I never talked about leaving Stow Schools. I had no intention of leaving Stow Schools.

"***"

For purposes of determining whether speech is protected, government employees speaking as citizens on matters of public concern have been distinguished from employees discussing topics of personal interest. *Connick, supra,* at 147; *Schalk, supra,* at 495; *Rowland v. Mad River Local Sch. Dist.* (C.A.6, 1984), 730 F. 2d 444, 449, certiorari denied (1985), 470 U.S. 1009. Adkins' conduct clearly falls in the later category. The interview took place in his office and pertained only to the performance of his team. *By his own testimony,* Adkins was not attempting to arouse public debate or promote a cause with expected constitutional protection. See *Barkoo, supra,* at 619; *Rowland, supra,* at 449. Since the former coach has not met his burden of demonstrating that his conduct was constitutionally protected, his claim should have been dismissed. *Connick, supra,* at 146.

Adkins' counsel makes much of the trial court's finding that the superintendent and Board members did in fact believe the former coach had criticized them in the article. We are asked to rule that their perceptions can create a constitutional violation where one would not otherwise exist. This we cannot do. As already stated, it is the subjective intention of the speaker -- not the interpretation of the audience -- which largely determines whether speech is protected. Even if the Board's decision not to renew Adkins' supplemental contract was based upon erroneous grounds,[1] there is nothing in the Constitution which would allow us to correct it. Accordingly, this assignment of error is sustained.

### Assignment of Error II

"The common pleas court committed prejudicial error by awarding judgment in favor of plaintiff-appellee which is not supported by the manifest weight of the evidence."

Given our disposition of the first assignment of error, this assignment of error is overruled.

### Conclusion

The Board's first assignment of error is sustained and the trial court is reversed. The second assignment of error is overruled. pursuant to App. R. 12(B), judgment is rendered in favor of the Board and Adkins' claim is dismissed.

CACIOPPO, J., and CIRIGLIANO, J., concur.

---

[1] In light of our resolution of the constitutional question presented, we will not address the propriety of the Board's decision.